UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **DONOVAN SHAW, et al.,** | } |
| **Plaintiffs,** | } |
| v. | }  Case No.: 1:22-cv-01382-RDP |
| **WENDY KAY SHAW, et al.,** | } |
| **Defendants.** | } |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on (1) Defendant Metropolitan Life Insurance Company's ("MetLife") Motion for Judgment on the Pleadings or Alternatively for Summary Judgment (Doc. # 8), and (2) Defendant Wendy Craven f/k/a Shaw's Joinder in MetLife's Motion for Judgment on the Pleadings or Alternatively for Summary Judgment (Doc. # 11). The parties have fully briefed the Motions (Docs. # 13, 15, 16) and they are ripe for decision. At the court's direction, the parties have also addressed the question of jurisdiction. (Docs. # 12, 14). As discussed more fully below, the court determines that it has subject matter jurisdiction, that MetLife's Motion is due to be granted, and that Craven's Motion is due to be denied.

**I.      Jurisdiction**

"Federal courts are courts of limited jurisdiction and are required to inquire into their [subject matter] jurisdiction at the earliest possible point in the proceeding." *Kirkland v. Midland Mortgage Co.*, 243 F.3d 1277, 1279-80 (11th Cir. 2001) (citations omitted). Indeed,

> A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking. The party invoking the jurisdiction of the court has the duty to establish that federal jurisdiction does exist but, since the courts of the United States are

> courts of limited jurisdiction, there is a presumption against its existence. Thus, the party invoking the federal court's jurisdiction bears the burden of proof.
>
> If the parties do not raise the question of lack of jurisdiction, it is the duty of the federal court to determine the matter *sua sponte*. Therefore, lack of jurisdiction cannot be waived and jurisdiction cannot be conferred upon a federal court by consent, inaction or stipulation.

*Fitzgerald v. Seaboard Sys. R.R., Inc.*, 760 F.2d 1249, 1251 (11th Cir. 1985) (per curiam) (cleaned up).

In this case, three non-Alabama resident children of David Randall Shaw (the "Decedent") filed suit -- ostensibly on behalf of the Decedent's Estate -- against the Decedent's former wife, an Alabama resident, and "Federal Employee Group Life Insurance" who Plaintiffs allege is a foreign corporation licensed to do business in Alabama. (Doc. # 1 at ¶¶ 1-5).

MetLife appeared and moved for judgment on the pleadings. (Doc. # 8). MetLife contends it was incorrectly named in the Complaint as "Federal Employee Group Life Insurance." (Doc. # 8 at 1). Actually, MetLife administers claims for benefits under the FEGLI Program pursuant to the Federal Employees' Group Life Insurance Act ("FEGLIA"), 5 U.S.C. § 8701 et seq. (Doc. # 8-1 at ¶ 3). It is incorporated and has its principal place of business in New York. (Doc. # 12 at 10).

In the Complaint, Plaintiffs allege that the court has jurisdiction over this matter pursuant to "28 U.S.C. § 1332(a)(1) in that complete diversity exists between the litigants and the amount in controversy exceeds $75,000.00 []." (*Id*. at ¶ 6). Further, Plaintiffs asserted five state law causes of action: (1) Breach of Contract: Settlement Agreement for Divorce against Wendy Craven; (2) Conversion against Wendy Craven; (3) Breach of Contract: Insurance Contract against MetLife; (4) Breach of Fiduciary Duty against Wendy Craven and MetLife; and (5) Fraud against Wendy Craven.  (Doc. # 1 at 3-5).

In response to the court's Show Cause Order regarding jurisdiction, MetLife asserts that the court has federal question jurisdiction over the state law claims in this case because the claims against it turn on the application of the federal statutory and regulatory provisions of FEGLIA. But that was not the jurisdictional basis asserted by Plaintiffs in the Complaint. Moreover, federal jurisdiction over a state law claim will lie only in the "slim category" of cases in which the federal issue is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

In *Parker v. Metropolitan Life Insurance Co.*, a case similar to this one, the district court determined that although FEGLIA's order of precedence would dictate the proper beneficiary under the policy, the plaintiff's tort claims did not necessarily implicate federal law. 264 F. Supp. 2d 364, 366 (D.S.C. 2003). "The real issues" were whether MetLife had negligently paid a third-party who claimed to be the proper beneficiary and whether that third-party had "fraudulently obtained the FEGLI proceeds." *Id*. Similarly, in *Miller v. Bruenger*, the Sixth Circuit determined that federal question jurisdiction did not exist based on the interpretation of a FEGLI life insurance policy. 949 F.3d 986, 989 (6th Cir. 2020).

Here, the claims asserted in the Complaint are state law claims. The issues in the case involve (1) whether Met Life or Wendy Craven breached either the Insurance Policy or the Divorce Settlement Agreement, (2) whether Wendy Craven converted any funds belonging to Plaintiffs or fraudulently obtained the insurance proceeds, and (3) whether Defendants breached any fiduciary duties. (Doc. # 1 at 3-5). As in *Parker*, although FEGLIA's order of precedence dictates the proper beneficiary under the policy, Plaintiff's tort claims do not necessarily implicate federal law. 264 F. Supp. 2d at 366. Therefore, federal question jurisdiction does not exist.

As they did in their Complaint, Plaintiffs assert that diversity jurisdiction is satisfied in this case. (Docs. # 1, 14). MetLife also asserts, in the alternative, that the court has diversity jurisdiction over the case. (Doc. # 12). MetLife argues that the Estate of the Decedent is not a proper party and complete diversity exists among the remaining proper parties. (*Id*.). Interestingly, although the Complaint's caption indicates that Plaintiff Christopher Cody Shaw asserts claims "individually, and by and on behalf of the Estate of" the Decedent, the Estate is not named as a party in the section of the Complaint identifying the parties. (Doc. # 1 at ¶¶ 1-6). To further confuse matters, the introductory paragraph of the Complaint states that Plaintiffs' Complaint is "against Defendant Wendy Kay Shaw, individually *and the Estate* of" Decedent. (Doc. # 1 at 1).

In response to the court's Show Cause Order regarding jurisdiction, Plaintiffs have requested that the Decedent's Estate be dismissed without prejudice. (Doc. # 14 at 1-2). This request illustrates that the Complaint does not actually name the Estate as a party – *i.e.*, that is, Plaintiffs did not intend to make the Estate a party to this case (whether as a plaintiff or a defendant). (*See* Doc. #1 at 1, ¶¶ 1-6). Furthermore, Plaintiffs' counsel in this matter, Christopher R. Smitherman, is the Personal Representative of the Estate. (Doc. # 1-2 at 1). Therefore, dismissal is appropriate because even if Plaintiffs had intended the Estate to be a Plaintiff in this case, none of the three named Plaintiffs have standing to sue on behalf of the Estate. *See Douglass v. Jones*, 628 So. 2d 940, 941 (Ala. Civ. App. 1993) ("An action filed on behalf of the estate must be brought by the executors."); *In re Eldridge*, 348 B.R. 834, 844-45 (Bankr. N.D. Ala. 2006) (finding that, under Alabama law, "no one other than the decedent's personal representative, including relatives, or heirs, or beneficiaries, or 'the estate' itself, has legal standing to file or prosecute an action on behalf of the estate"). Therefore, as the court's docket properly reflects, the Estate of David Randall Shaw is not a party to this case.

Accordingly, because (1) Plaintiff Donovan Shaw is domiciled in Texas, Plaintiff Jennifer Page Shaw is domiciled in Michigan, and Plaintiff Christopher Coy Shaw is domiciled in Oregon; (2) Defendant Wendy Craven is domiciled in Alabama (Doc. # 1) and Defendant MetLife is incorporated and has its principal place of business in New York (Doc. # 12 at 10); and (3) the amount in controversy is over $75,000 (the insurance proceeds at issue are $364,000, and Plaintiffs' Complaint makes a prayer for damages "in excess of $2,000,000"). (Doc. # 1 at ¶¶ 14, 24, 27, 35, 39, 42(h)). Thus, pursuant to 28 U.S.C. § 1332, this court has diversity jurisdiction over this case.

## II.        MetLife's Motion for Judgment on the Pleadings

The claims asserted against MetLife in this case are contained in Count III, which alleges a breach of the Insurance Policy, and Count IV, which alleges a breach of fiduciary duty. (Doc. # 1). MetLife argues that it is entitled to judgment on the pleadings because it properly paid the FEGLI benefits to Wendy Craven (formerly Wendy Shaw) in accordance with the federal statutory and regulatory provisions of FEGLIA. (Doc. # 8 at 1-2).

Plaintiffs respond that MetLife was put on notice of the Settlement Agreement between David Randall Shaw and Wendy Craven relating to their divorce and of their Judgment of Divorce. (Doc. # 13 at ¶ 15). Under those documents, Plaintiffs argue, Craven "waived any and all rights to David Randall Shaw's [] Life Insurance Benefits []. As a result of this waiver, the policy proceeds would pay out to an alternative beneficiary, and if no such beneficiary [was] named, then to the Estate of David Randall Shaw," pursuant to Alabama law. (Doc. # 13 at ¶ 16).

### A.        Relevant Facts

Decedent was a retiree of the United States Postal Service and a participant under the FEGLI Program. (Doc. # 8-1 at ¶ 3). The United States Office of Personnel Management ("OPM")

5

(or other federal agencies) performs recordkeeping functions for the FEGLI program, including receiving beneficiary designations. (Doc. # 8-1 at ¶ 4). MetLife does not receive or maintain beneficiary designations from participants in the regular course of its business until a claim for benefits is submitted, at which time OPM provides to MetLife a claim file, including the beneficiary designations it has received. (*Id*.).

Decedent and Craven were married for over twenty years. (Doc. # 1 at ¶¶ 8-9). They were divorced on June 4, 2021. (Doc. # 1 at ¶ 9; Doc. # 1-1 at 1-4). In the divorce Settlement Agreement, Craven waived any claim to the Decedent's life insurance benefits. (Doc. # 1 at ¶ 10; Doc. # 1-1 at 1-4).

Decedent died on August 12, 2021. (Doc. # 1 at ¶ 11). Craven made a claim for Decedent's life insurance benefits. (Doc. # 8-1 at 33-38). The two most recent beneficiary designations, dated May 11, 2017 and January 16, 1998, named Wendy Shaw (again, now Wendy Craven) as 100% beneficiary. (Doc. # 8-1 at 28, 30). Therefore, in accordance with FEGLIA, MetLife paid the full life insurance benefits to Craven. (Doc. # 8-1 at ¶ 5).

Plaintiffs allege that they "believe" FEGLI/MetLife had notice of Decedent's divorce before his death, although they acknowledge that they have no personal knowledge on this issue. (Doc. # 8-1 at ¶¶ 7, 15). *After* Decedent's death, Plaintiff Jennifer Shaw contacted FEGLI/MetLife and provided copies of the Divorce Decree and Settlement Agreement. (Doc. # 1 at ¶ 13). There was no court order directing the payment of the FEGLI Benefits on file with OPM at the time of Decedent's death. (Doc. # 8-1 at ¶ 6). The Divorce Decree says nothing about life insurance benefits. (Doc. # 1-1 at 1-2). The Settlement Agreement does not direct any action to be taken with regard to Decedent's life insurance. (Doc. # 8-1 at 20-26).

**B.     Standard of Review**

Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. *Riccard v. Prudential Ins. Co*., 307 F.3d 1277, 1291 (11th Cir. 2002) (internal quotations omitted). However, when ruling on a motion for judgment on the pleadings, the court's review is limited to the pleadings themselves. *Perez v. Wells Fargo, N.A*., 774 F.3d 1329, 1335 (11th Cir. 2014).

Here, the court considers matters outside of the pleadings, such as MetLife's Declaration and the claim file for the Decedent's life insurance. Therefore, Federal Rule of Civil Procedure 56(c) provides the standard of review. Under that Rule, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see* Fed. R. Civ. P. 56(c). The moving party must show the court that there is a basis for granting summary judgment, and must point to the evidence contained in the pleadings that demonstrates an absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. When the movant has met its burden, Rule 56 requires the non-moving party to highlight specific facts beyond the pleadings (such as affidavits, depositions, interrogatory answers, or admissions on file) that show a genuine issue for trial. *See Id.* at 324. In making a determination as to which facts are material, a court is guided by substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**C.     Analysis**

FEGLIA governs the payment of life insurance benefits under the Decedent's FEGLI Policy. *See* 5 U.S.C. § 8705; *Hillman v. Maretta*, 569 U.S. 483, 497 (2013) (holding that "where

a beneficiary has been duly named, the insurance proceeds she is owed under FEGLIA cannot be allocated to another person by operation of state law"); *O'Neal v. Gonzalez*, 839 F.2d 1437, 1438, 1440 (11th Cir. 1988) (holding that "[a]n insured's designation of beneficiary under [FEGLIA] prevails for all purposes" and FEGLIA's language "indicates that Congress intended to establish, for reasons of administrative convenience and for the benefit of designated beneficiaries, an inflexible rule that the beneficiary designated in accordance with the statute would receive the policy proceeds, regardless of other documents or the equities in a particular case").

FEGLIA provides that an employee may designate a beneficiary to receive the proceeds of his life insurance at the time of his death. 5 U.S.C. § 8705(a); 5 C.F.R. § 870.801(a). Pursuant to 5 C.F.R. § 870.802(b), a beneficiary designation must be in writing, signed by the insured, witnessed and signed by two people, and received by the appropriate office before the death of the insured. An insured may change his beneficiary designation at any time without the knowledge or consent of the previous beneficiary. 5 C.F.R. § 870.802(f).

FEGLIA further provides that, upon an employee's death, life insurance benefits are paid in accordance with a specified "order of precedence." 5 U.S.C. § 8705(a).

> The proceeds accrue "[f]irst, to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death." "[I]f there is no designated beneficiary," the benefits are paid "to the widow or widower of the employee." Absent a widow or widower, the benefits accrue to "the child or children of the employee and descendants of [the] deceased children"; "the parents of the employee" or their survivors; the "executor or administrator of the estate of the employee"; and last, to "other next of kin."

*Hillman*, 133 S.Ct. at 1947-48 (quoting 5 U.S.C. § 8705(a)). Thus, under the statutory language of § 8705(a) and the regulatory provisions of § 870.801(a), life insurance benefits of a FEGLI policy are paid first to the designated beneficiary.

FEGLIA also includes an express preemption provision that states in relevant part that "[t]he provisions of any contract under [FEGLIA] which relate to the nature or extent of coverage

8

or benefits (including payments with respect to benefits) shall supersede and preempt any law of any State . . . which relates to group life insurance to the extent that the law or regulation is inconsistent with the contractual provisions." 5 CFR § 8709(d)(1); *Hillman*, 569 U.S. at 488. In addition to FEGLIA's express preemption provision, federal conflict preemption requires preemption of state laws to the extent they are in conflict with a federal statute. *Id*. (citing *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 372  (2000). As the Eleventh Circuit explained:

> While the result may be harsh, the language and intent of the statute are clear. The statute was amended after the Ninth Circuit's decision in *Sears v. Austin*, 292 F.2d 690 (9th Cir.), *cert. denied*, 368 U.S. 929, 82 S.Ct. 365, 7 L.Ed.2d 192 (1961), which held that a valid holographic will was effective to designate a beneficiary under a FEGLIA policy issued to one who had not previously designated a beneficiary. The Senate Report on the Amendment listed two reasons for the change: (1) administrative convenience; and (2) avoidance of serious delay in paying insurance benefits to survivors. The Report also noted that the Amendment was intended to "clarify Congress' intent [and] to state clearly that the order of precedence set out in that section shall prevail over any extraneous document designating a beneficiary...." S.Rep. No. 1064, 89th Cong.2d Sess. reprinted in 1966 U.S.Code Cong. & Admin.News 2070, 2071. This language indicates that *Congress intended to establish*, for reasons of administrative convenience and for the benefit of designated beneficiaries, *an inflexible rule that the beneficiary designated in accordance with the statute would receive the policy proceeds, regardless of other documents or the equities in a particular case*.

*O'Neal v. Gonzalez*, 839 F.2d 1437, 1440 (11th Cir. 1988) (emphasis added).

Under FEGLIA's order of precedence, the Decedent's FEGLI benefits "shall be paid ... [f]irst, to the beneficiary or beneficiaries designated by [the decedent]" in his beneficiary designation form on file with OPM. 5 U.S.C. § 8705(a). Even though Craven may have waived any right to insurance proceeds in the divorce Settlement Agreement, § 8705(a)'s first rule of preference applies. Moreover, even if it had been received by or filed with OPM prior to the Decedent's death (and, again, there is no evidence that it was), the Judgment of Divorce says nothing about life insurance. Moreover, even if the Judgment of Divorce said anything about the FEGLI insurance, it "shall not be effective." *Id*. § 8705(e)(2).

Because under FEGLIA MetLife was compelled to distribute the Decedent's FEGLI life insurance proceeds to Craven, MetLife's Motion for Judgment on the Pleadings or Alternatively for Summary Judgment (Doc. # 8) is due to be granted.

### III.     Craven's Joinder in MetLife's Motion for Summary Judgment

Craven argues that "[t]he entirety of [MetLife's] motion for judgment on the pleadings or alternatively for summary judgment is [also] applicable" to her. (Doc. # 11). The court disagrees.

Plaintiffs' Complaint asserts the following claims against Craven: (1) Breach of Contract: Settlement Agreement for Divorce; (2) Conversion; (3) Breach of Fiduciary Duty; and (4) Fraud. (Doc. # 1 at 3-5). While FEGLIA controlled MetLife's obligations with regard to distributing the proceeds of Decedent's FEGLI policy, and that statute resolves Plaintiffs' claims against MetLife, it does not speak to any independent obligations Craven may have under the divorce Settlement Agreement (where she waived any claim to the Decedent's life insurance benefits), the Judgment of Divorce, or otherwise. *See Herrera v. Metropolitan Life Insurance Co.*, 2011 WL 6415058, at *9 (S.D. N.Y. Dec. 19, 2011) (Kaplan, J.) (granting MetLife's motion to dismiss widower's claims against it based on FEGLIA, but refusing to dismiss related claims for conversion and unjust enrichment against stepdaughter who forged the widower's signature to collect the money); *Metropolitan Life Insurance Co. v. Barbour*, 555 F. Supp. 2d 91, 98 (D.D.C. 2008) (examining claims of breach of fiduciary duty, intentional infliction of emotional distress, and fraudulent misrepresentation on the merits because they were not premised on receiving the policy proceeds based on MetLife's beneficiary determination, and accordingly, would fall outside the scope of FEGLIA's preemption provision).

Because Plaintiffs' claims against Craven fall outside the scope of FEGLIA's preemption provision, Craven's Joinder in MetLife's Motion for Judgment on the Pleadings or Alternatively for Summary Judgment (Doc. # 11) is due to be denied.

## IV.    Conclusion

Under FEGLIA, the beneficiary designation form on file with OPM and MetLife controls. MetLife was entitled to pay Craven 100% of Decedent's FEGLI benefits under the policy. Therefore, MetLife is entitled to judgment in its favor on Count III alleging a breach of the Insurance Policy and Count IV alleging a breach of fiduciary duty against it. MetLife's Motion for Judgment on the Pleadings or Alternatively for Summary Judgment (Doc. # 8) is **GRANTED** and Plaintiffs' claims against MetLife are **DISMISSED WITH PREJUDICE**.

However, FEGLIA does not address whether Craven owed and/or breached any independent obligations to Plaintiffs and those claims fall outside scope of FEGLIA's preemption provision. Therefore, Craven's Joinder in MetLife's Motion for Judgment on the Pleadings or Alternatively for Summary Judgment (Doc. # 11) is **DENIED**.

**DONE** and **ORDERED** this March 30, 2023.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE